UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:17-CR-40-CHB-HAI-3 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| JACQUELINE M. ROBINSON, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Jacqueline M. Robinson. *See* D.E. 758. District Judge Claria Horn Boom entered a judgment against Defendant on March 27, 2019, following a plea of guilty to a violation of 21 U.S.C. § 846, conspiracy to distribute a detectable amount of methamphetamine. D.E. 531. Defendant was originally sentenced to time-served, which was approximately 15 months and 8 days, followed by a three-year term of supervised release. *Id.* at 2–3.

Defendant was released from custody to begin service of her three-year term of supervised release on March 26, 2019. On September 4, 2019, Judge Boom approved a Report on Offender Under Supervision which allowed Defendant to remain on supervision after she tested positive for methamphetamine on August 12, 2019. D.E. 625. The test was sent to Alere Laboratory for confirmation, which returned positive results on August 19, 2019. Defendant denied use and explained that she used a "vapor device" that her then-boyfriend used and that she was unaware he was using drugs. Officer Jones of the United States Probation Office ("USPO") increased Defendant's drug screens and treatment sessions. She was also instructed to cease further contact with her then-boyfriend.

On December 5, 2019, Judge Boom modified the conditions of Defendant's release to require that she successfully complete the residential inpatient substance abuse treatment program at Hope in the Mountains. D.E. 649. The request to modify indicated that a sweat patch Defendant wore between November 8, 2019, and November 15, 2019, was sent for lab testing and the results were positive for the use of methamphetamine. *Id*. Defendant admitted to the use of methamphetamine and signed an admission form. *Id*. Officer Jones recommended that Defendant be placed in inpatient treatment to remove her from the negative influences she was surrounded by in Ashland. *Id*.

On July 31, 2020, Defendant's term of supervised release was revoked for failing to complete a long-term substance abuse treatment program, failing to answer the questions asked by the probation officer truthfully, associating with a convicted felon, and failing to follow instructions given by the probation officer. Defendant was sentenced to thirty months of supervised release with the added conditions that she report to the USPO in Ashland once per week over a period of three years for drug screening, cease all contact with Steven Messer, and report any attempted contact by Messer to the USPO. Defendant began her second term of supervision on July 31, 2020.

I.

On May 9, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges Defendant with five violations stemming from her impermissible contact with Steven Messer. Violation #1 alleges Defendant violated the condition requiring her to answer questions asked by her probation officer truthfully. According to the Report,

> On May 4, 2022, this officer spoke with Jacqueline via telephone and asked her if she had been staying with Stephen [sic] Messer at the Vincent Apartment in

2

> Ashland, KY. She denied staying with him or having contact with him. This officer advised her that I knew she wasn't telling me the truth but she continued to deny staying with Messer or having contact with him. Ms. Robinson was instructed to report to the probation office the following day. On May 5, 2022, Jacqueline met with this officer at the U.S. Probation Office and admitted to having contact and occasionally staying the night with Stephen [sic] Messer.

This is a Grade C violation.

Violation #2 alleges Defendant violated the condition requiring that she live at a place approved by the probation officer and notify the probation officer of any changes about her living arrangements. Additionally, according to the Report,

> Since January 2022, Jacqueline has been spending most of her time at the Vincent apartments instead of her listed residence at 9404 Alley Branch in Catlettsburg, KY. Jacqueline admitted to staying with friends and Stephen [sic] Messer at the Vincent apartment frequently. This officer made contact with Michael and Melissa Lambert, with whom Jacqueline is supposed to be residing with at 9404 Alley Branch, and they advised that since January 2022, Jacqueline has spent approximately 14 nights at their residence, at most.

This is a Grade C violation.

Violation #3 alleges Defendant violated the condition requiring that she not communicate or interact with a known convicted felon without permission from her probation officer. The Report indicates that Defendant admitted to having contact with Steven Messer, whom Defendant and the probation officer know to be a convicted felon, and did not report this contact to the probation office. This is a Grade C violation.

Violation #4 alleges Defendant violated the condition requiring that she follow the instructions of the probation officer. As to this violation, the Report states that Defendant was instructed numerous times to not have contact with Messer and to notify the probation officer if they had contact with each other. Defendant did not report that she had been having contact with Messer to the probation officer. This is a Grade C violation.

3

Violation #5 alleges that Defendant violated the condition requiring her to cease all contact with Steven Messer. As to this violation, the Report states that Defendant admitted to having contact with and staying with Messer. This is a Grade C violation.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on May 26, 2022. D.E. 757. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of her right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant argued for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. However, the Court granted Defendant's temporary release to attend her child's high school graduation, after the USPO verified her transportation with the Lamberts. D.E. 757.

At the final hearing on June 2, 2022, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 760. Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that she engaged in conduct that is a Grade C violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(3).

At the final hearing, the government recommended a term of imprisonment of six months. Defense counsel recommended a term of six months of home detention with electronic monitoring. Both counsel agreed that no additional term of supervision should be imposed.

The government's argument focused on Defendant's history and characteristics and her history on supervision thus far. The government stated that Defendant has a history of non-compliance, even while on probation previously in an unrelated case, as noted in her Presentence Investigation Report ("PSR"). The government pointed out that Defendant has now had four instances of violative conduct, two of which did not result in revocation. The government noted that Defendant has been given numerous breaks by the Court, but has continued to take advantage of that leniency. The government argued that Defendant's conduct prevents the USPO from monitoring her on supervision. The government also argued that home incarceration is not punitive enough in light of Defendant's history and is insufficient to prevent her contact with Steven Messer.

United States Probation Officer Michael Jones testified that a staff member with the Boyd County Detention Center reported that Defendant had been conducting video calls with Messer while in custody on the current violations. Officer Jones testified that he did not know the subject matter of the calls or how many occurred. Officer Jones also stated that the only known criminal activity Defendant and Messer have participated in is using drugs and that Defendant has not had a positive drug screen since December 2019.

Following this testimony, the government argued that this information further supports its recommended sentence.

Defense counsel presented three character letters to the Court from staff members at Riverside Recovery Services, LLC, where Defendant has been employed since July 2020. Defense

counsel stated that the letters reflect that Defendant is a valued employee. Counsel also stated that Defendant's role allows her to serve people and build a sense of accomplishment. Defense counsel indicated that Defendant has regained custody of one of her children, which also reflects the improvements she has made. Counsel further stated that he agreed with many of the points the government made. However, Defense counsel indicated that Steven Messer has been an important part of Defendant's life and now suffers from several medical conditions that require surgery. Defense counsel also indicated that, if home detention is permitted, Defendant would stay with her sister.

Defendant declined to address the Court directly.

## II.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. § 846 is a Class C felony. *See* 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is two years of imprisonment. *See* 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that

constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to all five violations. Given Defendant's criminal history category of III (the category at the time of the original conviction in this District) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is five to eleven months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

### III.

The Court has reviewed the entire record, including the Report and its accompanying documents, and Defendant's underlying judgment and sentencing materials. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Likewise, the parties addressed those statutory factors in making their sentencing recommendations to the Court.

Concerning the nature and circumstances of the underlying offense, Defendant was a minor participant in the conspiracy. She was compensated with quantities of methamphetamine or cash to drive or otherwise assist two other members of the conspiracy in obtaining methamphetamine. Defendant's sentencing range for her original conviction was 37 to 46 months, and she received the benefit of a significant downward departure to approximately 15 months, her time served. As to Defendant's history and characteristics and the need to deter criminal conduct and protect society, Defendant's history of drug abuse provides the risk that, if she relapses, she is a danger of criminal conduct which will harm the public. This is not a significant factor at this point in the Court's evaluation.

The Court must also consider whether a defendant needs any education, training, or treatment. Since she left Hope in the Mountains, Defendant is doing well with her treatment, and Officer Jones also testified during the final hearing that she has not has a positive drug screen since

7

December 2019. Although her association with Steven Messer jeopardizes her sobriety, further expenditure of resources towards Defendant's rehabilitation is not supported by the record.

In fashioning its recommended sentence, the Court must take into account whether an additional term of supervised release is warranted. Defendant's conviction under 21 § 841(b)(1)(B) carries no maximum term of supervised release. However, the Court agrees with both parties that Defendant will not benefit from any additional supervision. The Court has achieved all it can with Defendant while on supervision. While she has made considerable progress in her rehabilitation and employment, Defendant has repeatedly shown, even while in custody on the current violations, that she will not abide by the conditions of her supervision.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant has had the benefit of a downward departure at her original sentencing, two violations for methamphetamine use where no action was taken by the Court, a lenient sentence after the previous four Grade C violations, and was recently permitted temporary release from custody on the current violations to attend her child's high school graduation. Despite this, Defendant has repeatedly breached the Court's trust by refusing to comply with the conditions of her release and cease contact with Steven Messer. Moreover, Defendant was dishonest about this contact with her probation officer and even continued to contact Messer while in custody on the current violations. These violations are particularly severe in light of the amount of trust and leniency given to Defendant. Further, the

current violations erase any credit owed to Defendant's progress in other areas, such as her employment and rehabilitation.

The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. Although the record here would justify an above-Guidelines sentence, the Court recommends a sentence of incarceration of six months. For the reasons discussed above, the Court finds this penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of the violations;

(2) Revocation and imprisonment for a term of six months; and

(3) No supervised release to follow.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Boom's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and

rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

   This the 6th day of June, 2022.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge